**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DIEGO GAINES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| K-FIVE CONSTRUCTION CORPORATION, | ) |
| | ) |
| | ) |
| Defendant. | |

## COMPLAINT

Plaintiff, DIEGO GAINES, by and through his attorneys, THE COFFEY LAW OFFICE, P.C., and pursuant to leave of court, states as and for his Complaint against Defendant K-FIVE CONSTRUCTION CORPORATION, as follows:

### Nature of Case

1. Plaintiff brings this action against Defendant to recover damages proximately caused by Defendant's illegal discriminatory and retaliatory treatment while employed and termination of his employment in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (hereafter "Title VII"), and the clearly mandated public policy of the State of Illinois. Plaintiff also brings this action against Defendant pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. 202 *et seq.* (hereinafter the "FLSA"), to recover unpaid overtime wages for work he performed for Defendant in violation of the FLSA.

### Jurisdiction and Venue

2. This Court has original jurisdiction over Plaintiff's Title VII and FLSA claims under 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

3. This Court has supplemental jurisdiction over Plaintiff's Illinois common law claim pursuant to 28 U.S.C. 1367(a).

4. Venue is proper in this Court in that Defendants' illegal acts complained of herein took place within the geographical boundaries of this Court's jurisdiction.

5. On January 12, 2010, Plaintiff filed a timely charge of illegal national origin discrimination and retaliation against Defendant in violation of Title VII with the local district office of the EEOC (Charge No. 846-2009-62104).

6. On May 12, 2010, Plaintiff filed a supplemental charge of illegal national origin discrimination and retaliation against Defendant in violation of Title VII with the local district office of the EEOC (Charge No. 440-2010-03945).

7. On February 23, 2011, the EEOC issued its Notices of Right to Sue in connection with Plaintiff Charge Nos. 846-2009-62104 and 440-2010-03945, copies of which are attached hereto. This Complaint is being filed within 90 days of Plaintiff's receipt of the EEOC Right to Sue Notice.

**The Parties**

8. Plaintiff, Diego Gaines (hereafter "Diego"), is an individual of Mexican national origin residing at all relevant times in Chicago, Illinois, County of Cook.

9. Defendant, K-Five Construction Corporation (hereafter "K-Five"), is an Illinois corporation registered and licensed to do business in Illinois, and operating primarily out of in facility in Lemont, Illinois, within the geographical boundaries of this Court's jurisdiction, where K-Five's illegal activities described below took place.

10. At all relevant times, K-Five employed in excess of 15 employees at its facility in Lemont, Illinois, was engaged in commerce with annual revenues of in excess of

$500,000, and was thus an employer and covered entity as defined under Title VII and the FLSA.

**Relevant Facts**

11. Diego began his employment with K-Five in or around May 2005.

12. Diego's most recent position was Semi-Dump Truck Driver.

13. In July 2009, a co-employee told Diego to "get a fucking watch that was made in America, not in a foreign fucking country."

14. Diego found the co-employee's statement, tone and manner of speaking highly offensive and hostile.

15. Diego complained to K-Five about the remark. Diego is not aware that K-Five investigated his complaint, or took any reasonable action against the co-employee and/or to stop such offensive workplace statements.

16. In November 2009, a co-employee stated over K-Five's CB radio system that "Mexicans should go back to Mexico."

17. Diego heard the statement and found the co-employee's statement, tone and manner of speaking highly offensive and hostile.

18. Diego complained to K-Five about the remark. Diego is not aware that K-Five investigated his complaint, or took any reasonable action against the co-employee and/or to stop such offensive workplace statements.

19. Following Diego's July and November 2009 complaints, K-Five took various adverse actions against Diego including, but not limited to,

   a. Scheduling him on an increasing number of night shifts;

   b. Reducing the number of hours he was scheduled to work;

  c. Delaying the issuance of a work permit or "badge" so he could work at O'Hare airport where my co-employees received their badges without delay;

  d. Failing to remove discipline from his file that per the union contract and/or work rules was supposed to be removed after a certain period of time;

  e. Reprimanding him multiple times for the same alleged performance issues;

  f. Reprimanding him for trivial or minor alleged misdeeds where co-employees were not reprimanded, or reprimanded less harshly for the same or similar alleged conduct; and,

  g. Monitoring him more closely than co-workers, including, but not limited to, ordering him but no other drivers to take a drug test, and certain supervisor's targeting him and referring to him as a "troublemaker."

20. On April 28 and 29, 2010, Diego complained about various safety issues with the truck that K-Five assigned him to drive (No. 4289) including, but not limited to, that the steering wheel pulled to the left and was not centered, the driver side door latch would not fully close, the lower/middle back lever on the driver's seat was broken and his back was hurting as a result, and the tarp was bowed and would not open/close properly.

21. On April 30, 2010, Diego was again assigned to drive truck No. 4289. He initially refused due to his safety concerns which he believed were not fully repaired. Diego's supervisor angrily asked him repeatedly if he refused to drive truck No. 4289. Believing that he would be terminated if he refused to drive truck No. 4289, Diego ultimately agreed.

22. At the end of his shift on April 30, 2010, Diego asked a mechanic to test drive truck

No. 4289. The mechanic told Diego that the steering drag link was off-centered. The mechanic also confirmed that the lower lumbar lever of the driver's seat was broken. Diego reported the mechanic statements as well as Diego's opinion that the truck was unsafe to drive on his Driver's Daily Report.

23. On May 4, 2010, K-Five terminated Diego's employment over the telephone allegedly based on written warnings that Diego had yet to receive or be informed of.

24. On May 5, 2010, Diego received three "WARNING SLIPS," one dated April 28, 2010, and the other two dated April 30, 2010, and one "DISCHARGE SLIP" dated May 4, 2010, in the U.S. mail from K-Five. The May 4th "DISCHARGE SLIP" alleged that Diego violated Work Rule #10 by falsifying information on his Driver's Daily Report, and that it was his fifth warning.

25. At all relevant times, Diego's work performance met or exceeded K-Five's legitimate expectations.

## Count I: National Origin Discrimination in Violation of Title VII

26. Diego restates and fully incorporates into Count I his allegations set forth in Paragraphs 1 through 25, above.

27. Title VII makes it unlawful to discriminate against an individual in the terms, conditions or privileges of employment on the basis of his or her national origin.

28. K-Five took the above-described adverse actions against Diego and terminated his employment because of his national origin in violation of Title VII.

29. K-Five treated similarly situated employees not of Mexican national origin more favorably than Diego, and did not issue warnings and/or terminate the employment of such employees after becoming aware of allegations that they engaged in rule

violations of a similar, or more serious nature.

30. As a direct and proximate result of K-Five's illegal national origin discrimination as described above, Diego has suffered mental and physical pain and anguish, a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages, and he is expected to incur future damages.

31. K-Five knew that its discriminatory acts as described above were prohibited by Title VII, or acted with reckless disregard to that possibility.

## Count II: Retaliation in Violation of Title VII

32. Diego restates and fully incorporates into Count II his allegations set forth in Paragraphs 1 through 25, above.

33. Title VII makes it unlawful for an employer to discriminate against an employee because he or she has opposed any practice made an unlawful employment practice by Title VII, or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

34. Diego in good faith believed that his co-employee's derogatory and offensive racial remarks that he complained to K-Five about as described above were illegal workplace discrimination and/or harassment.

35. As described above, Diego's complaints to K-Five concerning his co-employee's derogatory and offensive racial remarks were protected opposition activity under Section 2000e-3(a) of Title VII.

36. Furthermore, Diego's January 12, 2010, EEOC filing alleging illegal national origin discrimination and retaliation against K-Five in violation of Title VII (Charge No. 846-

2009-62104), was protected participation activity under Title VII.

37. K-Five took the above-described adverse actions against Diego and terminated his employment because of his protected activity in violation of Title VII.

38. K-Five treated similarly situated, non-complaining and/or non-charge filing employees more favorably than Diego, and did not issue warnings and/or terminate the employment of such employees after becoming aware of allegations that they engaged in rule violations of a similar, or more serious nature.

39. As a direct and proximate result of K-Five's illegal retaliation as described above, Diego has suffered mental and physical pain and anguish, a loss of wages, including, but not limited to, salary, bonuses, a loss of employment benefits and other pecuniary and non-pecuniary damages, and he is expected to incur future damages.

40. K-Five knew that its retaliatory acts as described above were prohibited by Title VII, or acted with reckless disregard to that possibility.

**Count III: Retaliatory Discharge in Violation of Illinois Public Policy**

41. Diego restates and fully incorporates into Count III his allegations set forth in Paragraphs 1 through 25, above.

42. Diego's April 2010 truck safety complaints as described above were activities protected by clearly mandated Illinois public policy as embodied by various federal statutes and regulations including, but not limited to, U.S. Department of Transportation regulations (49 CFR §§ 390, 392, 393, and 396) as well as the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105.

43. K-Five was aware of each of Diego's aforementioned April 2010 protected activities

within a short time after they occurred.

44. Diego's April 2010 protected activities were a motivating factor behind K-Five's decision to terminate his employment in May 2010.

45. As such, K-Five's termination of Diego's employment was causally related to his protected activities.

46. K-Five's termination of Diego's employment was therefore an illegal retaliatory discharge in contravention of Illinois public policy.

47. As a direct and proximate result of K-Five's illegal termination of his employment, Diego has suffered a loss of income in the form of wages and prospective retirement benefits, social security and other employment benefits, emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

48. The above described conduct by K-Five was wilful and wanton, and with reckless disregard and indifference to the law and the public policy of Illinois, and to Diego's rights. K-Five should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

**Prayer for Relief Common to Counts I, II and III**

**WHEREFORE**, Plaintiff DIEGO GAINES respectfully requests that this Court enter judgment in his favor and against Defendant, K-FIVE CONSTRUCTION CORPORATION, as follows:

A. Order K-FIVE to make DIEGO whole by paying him appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

  B. Order K-FIVE to immediately reinstate DIEGO to his former position or one comparable thereto; or, in the alternative, order K-FIVE to pay DIEGO an appropriate amount of front pay;

  C. Order K-FIVE to pay DIEGO compensatory damages in the maximum amount allowable under the law;

  D. Order K-FIVE to pay DIEGO punitive damages in the maximum amount allowable under the law.

  E. Order K-FIVE to pay DIEGO's costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

  F. Try all issues of fact to a jury; and,

  G. Grant such other relief as the Court deems just.

## Count IV: Failure to Pay Regular and/or Overtime Wages in Violation of the FLSA

49. Diego restates and fully incorporates into Count I his allegations set forth in Paragraphs 1 through 25, above.

50. From May 2005 to May 2010, Diego was employed by K-Five as that term is defined under the FLSA.

51. The FLSA requires that employers such as K-Five pay no less than the federal minimum wage and overtime wages equal to one and one-half times the employee's regular hourly rate for all hours worked in excess of 40 per week.

52. Throughout his employment by K-Five, K-Five (as well as 49 CFR §§ 396.13, 392.7, 392.8, 396.7 and 396.11) required Diego to perform a pre-trip safety inspection on his truck's major systems before his shift began, as well as a post-trip safety inspection upon returning to the yard after his shift had ended.

53. Diego customarily performed such pre-trip and post-trip inspections each and every day he worked for K-Five.

54. On average, it took Diego 30 minutes to perform the required pre-trip and post-trip inspections.

55. K-Five failed and refused to compensate Diego for such pre and post-trip inspection time worked.

56. K-Five's failure to pay Diego for such work was wilful.

**WHEREFORE**, Plaintiff DIEGO GAINES respectfully requests that this Court enter judgment in his favor and against Defendant, K-FIVE CONSTRUCTION CORPORATION, and award him his unpaid regular and/or overtime compensation, an equal amount in liquidated damages, pre-judgment interest, his costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees, to try all issues of fact to a jury; and, grant such other relief as the Court deems just.

    Respectfully submitted,
    Plaintiff, DIEGO GAINES,

By:    /s/ Timothy J. Coffey
    Timothy J. Coffey, Esq.
    THE COFFEY LAW OFFICE, P.C.
    Attorneys for DIEGO GAINES
    352 W. Hubbard Street, Suite 602
    Chicago, IL 60654
    (312) 627-9700